The next matter, number 24-1012, Humana, Inc. v. Biogen, Inc. et al. At this time, would counsel for the appellant, Humana, please introduce himself on the record to begin. Thank you. Robert Dunn for Appellant Humana, Inc. If you'd like, I'd like to reserve three minutes of your bill. You may. Thank you, Your Honor. Your Honors, this case arises out of a years-long fraudulent scheme perpetrated by Biogen, ACS, and several sham charities designed to defraud Humana out of hundreds of millions of dollars. Counsel. Yes. Actually, believe me, we've spent a long time on the case. Assume we understand your underlying theory. You have two issues to address. One is whether RICO incorporates the Illinois BRIC standing requirements under antitrust law and whether you are a direct purchaser or not. Then you've got the Rule 9b issues, so you want to get into it. Absolutely. Yes, so the district court in this case acknowledged that Humana was the direct and targeted victim. And under this court's decision in Naranton. No, it said that under Naranton, you had adequately pled a proximate cause. The standing issue, I think, is a different issue. Although, if you disagree, tell me why. So, quick clarification. What the court said is that we were the direct and targeted victim, but that that wasn't sufficient because the court said there was a separate standing inquiry. Our position is that there is no separate standing inquiry apart from the direct injury rule and that the direct injury rule, as announced in Holmes and as applied in Naranton, encompasses the direct purchaser rule from Illinois BRIC. And we can see that that is true. I'm sorry. Oh, go ahead. If you are not a direct purchaser, but you say the fraudulent scheme was directed to you and your evidence of fraud is the certification, then you say the question of whether you're a direct purchaser drops out of the case? Correct, yes. The question of whether we are a direct purchaser isn't relevant here because of the theory of wrongdoing and the theory of injury. What is the theory of wrongdoing? I have to say I spent time trying to understand it, and I'm not sure I fully grasped it. Sure, Your Honor. So, the theory of wrongdoing is that defendants engaged in illegal kickbacks by providing donations to these sham charities that were directly intended to cover co-pays of Biogen's drugs. That is an illegal kickback. Biogen cannot pay the co-pay. And if they had said that... That's not the theory of the violation. Well, this is the scheme, right? It's mail-and-wire fraud, so the fraudulent scheme. So that's part of the fraudulent scheme. They then hid that from Humana. Had the claim for payment come to Humana and said the co-payer is Biogen, Humana would not have covered the co-pay. We would have rejected the claim. And how would that have come your way? Through what mechanism would have it been? Were they making a representation? Because there's some slippage between hiding it and misrepresenting to you what was going on. And I take it when ACS, they had to actually provide a certification to you in order to get payment? They submitted a claim for reimbursement that includes an implied certification under contracts that we do have with ACS that contain the relevant agreement to comply with federal law. So there's an agreement to comply with law with ACS. Correct. And the idea is that every time they then ask for payment, they're saying the thing we're asking for complies with that. Yes. And you're saying ACS was not in compliance with it and was lying about it because of the kickback scheme. And ACS's certification also includes Biogen's certification. But you also are including in your claimed mail-and-wire fraud violations that are the predicates for the RICO that some of these prescriptions were you made the payment not to ACS, you made them to other pharmacies and to your own pharmacy? Correct. So how does the theory of the mail-and-wire fraud that you're articulating work in those instances? That's a great question. So in every case, all downstream entities in the Medicare system have to sign a contract with their immediate privy that contains the exact same statutory language that our contract with ACS contained. That is from that 423.505.I3. But then you're not the direct recipient of the fraudulent certification in any of those cases. Correct. So in those cases, the certification is made to the pharmacy. The pharmacy then essentially bundles that certification and they certify to us that the claim is clean. We then take the claim and certify it to the federal government. So even when you're buying, when you're making a payment, say to CVS, CVS is making an implied certification to you? Correct. And are you saying that was a fraudulent certification? From their perspective, it was unknowing, but they basically incorporate Biogen's certification and Biogen's certification was fraudulent. We then pass that on to the federal government who can prosecute Biogen for the exact same fraud. And so this would depend in part on what is being said from Biogen to that pharmacy, correct? Or not said. Or not said. And there's nothing in the pleadings referring to anything about what that document did or didn't contain, correct? Well, what we put in the pleadings is the required statutory language. The Medicare system, that's 423.505. It's not about what the actual communications were between those parties. No, and we're not obviously privy to those communications between those parties. But what we do know is that Biogen certifies. So is there any, and so if I were to just, I know it's sort of mixing and matching, but it relates also to the Rule 9 issues. What, so the certifications that you would say are the most clearly we know what was in them and you could tell from the complaint are the ones from ACS to? Humana. To Humana? Correct. And is there any reference to any of those in the specific ones in the pleadings? Well, not in the original complaint. In the amended complaint, yes. In the original complaint, what we alleged is that when ACS sent its claims to us, it certified that they were all clean. Because it omitted any indication that there was an anti-kickback violation. Can I, I thought you said earlier it wasn't an express certification. It had to be implied by looking back at contractual language. Correct. Has any of that contractual language, was that pled? Yes, Your Honor. If you look at paragraph 29 of the complaint. For each certification? No, the language was identical. There would have been nothing gained by including thousands of identical language. What's in paragraph 29? That is the contractually required language that appears from the Medicare statute and is required to be in the contract between ACS and Humana. It is that exact language from the Medicare statute. That is all we have in our contracts. The amended complaint, we've attached these contracts, and you can see it is that language from the statute itself, from the reg itself. Does the statute require that everybody in the chain have this in their contract? Correct, Your Honor. And is that pled? Yes, that's where I'm directing. If you look at paragraphs 27, 28, 29 of the original complaint, that's where we set forth the statutory scheme. The amended complaint, again, adds some color and some detail. But the point, I think getting back to Your Honor's question, is every time ACS submits a claim, it contains an implied certification that the claim is clean, that it is not being submitted in violation of federal law, including the anti-kickback statute. Now, the fundamental problem that we had at the time of the complaint is that we didn't know which claims coming from ACS were false and which were not. Last piece, and then I'll get off of this. With the non-ACS purchases or payments, payments to the non-ACS pharmacies, that's correct. Just help me again understand. What was being certified to you that wasn't true? What was being certified to us was that everyone in the downstream chain had complied with federal law. When CVS sends in their certification, are they certifying that everyone in the downstream chain complied with law? Yes, and we do the same thing when we certify to CMS. We have to certify that everyone in the downstream chain complies with federal law. That is why the federal government can pursue Biogen under the False Claims Act. Biogen doesn't make claims to the government. Humana makes claims to the government that incorporate the certifications for the downstream. So the idea is you're a direct victim, even though it went through CVS, they were a victim too. Sure. Because they couldn't ultimately make good on their scheme unless they knew you would be willing to be induced to pay.  Because if you wouldn't, then the pharmacy wouldn't pay them, and then they'd get nothing. Correct. Well, yeah, I mean CVS I don't think is a victim of the scheme, but I would say they were an unwitting participant perhaps. Why isn't CVS a victim of the scheme? Well, because the actual illegal kickback hasn't happened at the time that CVS takes possession of the drugs. The scheme isn't consummated until the kickback happens, and we don't know whether it will happen. Some people pay their own copays. So the scheme hasn't been consummated until the kickback happens, and then that final certification is made to us. So they're not a victim of the scheme. We are the victim, the only victim. Got it. Can I just play down on the Illinois BRIC? Humana has other customers, right? There's many, many customers. Insurance or pharmacies?  And suppose, just to play out how I understand your view on Illinois BRIC, if one of those insureds brought a claim under RICO based on the wire fraud violations you're alleging, they might be subject to Illinois BRIC. I would say they would be barred just under Holmes and Narantan because they wouldn't be direct injury people. That's assuming that there's not a separate standing inquiry. But insofar as there is a separate standing inquiry, they might be the victim only of a pass-on cost in the form of a higher premium, right? Perhaps. And what you're saying is that logic doesn't have any relationship to the nature of the violation you're complaining about. There's no passing on of anything. Correct. We're not passing it on to the insureds. Nobody passed it on to us. It's suffered by us in entirety and exclusivity. So the real question, we get back to the standing question here, is does it make any sense, absent a Supreme Court directive telling this court to do it, which it is not, to take the indirect purchaser rule, which is grounded in the notion that direct purchasers are the directly injured party, that allowing indirect purchasers to sue would bring in duplicative damages and difficult apportionment schemes, and the idea that the direct purchasers have an incentive to sue and should be, therefore, allocated the entire cause of action, does it make sense to transport that rule into a totally different context where the wrongdoing and the injury do nothing to the direct purchaser? No. One could rephrase the question as one of congressional intent. Did Congress, when it enacted RICO, intend to enact the strictures of antitrust law? If they did, then it is up to Congress now to amend RICO and deal with questions like health care insurance fraud, which is a major problem in this country, and this is a major policy issue, but it is better addressed by Congress, which at the time it passed RICO was not faced with this raft of problems. Why isn't that a sensible way of looking at all of this? If the Supreme Court had squarely held or does squarely hold that the indirect purchaser rule applies to every RICO claim where there's a purchase, irrespective of whether it makes sense, then yes, Congress would be the only entity that could fix that, but that is not the case here. The Supreme Court has not said that, and what the Supreme Court has said is that the indirect purchaser rule is an application of traditional proximate cause principles. It said that in Appleby Pepper. Congress understood at the time it enacted RICO. I mean, you're asking us to create a circuit split, right? Three circuits have ruled against you. No, Your Honor. To be clear, well, I think the ground has shifted somewhat since the briefing closed. Our view is that there would be no circuit split between McCarth, the first, sixth, and seventh under the previous cases because all of those, the indirect purchaser application and the direct injury rule, or sorry, the direct injury and direct purchaser rule were the same thing. They conflated, right? And that's true in every antitrust case because every antitrust case the direct purchaser is the directly injured party. You're saying that, just so I understand textually, the idea is that by reason of injury for the antitrust violation and then by reason of a RICO violation, the way they become different textually is that one is referring to an antitrust violation and one is referring to a RICO violation. The nature of a RICO violation being different potentially just changes the analysis. Is that the idea? Yeah. It changes who is the directly injured party, right? The directly injured party is always the direct purchaser. So you can't deduce anything from the textual similarity because there's a glaring difference. One's talking about antitrust violations and one's talking about RICO violations. When you look at the violation, then the logic that underlies the interpretation of the antitrust statute in Illinois BRIC just doesn't apply. And that's essentially what the court said in Holmes. It said, look, the diversity of types of wrongdoing and injury that can support a RICO claim are so broad that there's no one black letter rule that can apply, whereas in the antitrust context a bright line rule is applicable. Just to take it, this is a fanciful hypothetical, but suppose a Clayton Act violation was a predicate RICO act, right? You wouldn't deny that then Illinois BRIC would apply under RICO. Well, in a case that is predicated on that. Predicated on that. Exactly. In other words, it just depends what's the nature of the violation. If the nature of the violation is such that the indirect purchaser rule makes sense, apply it. If the nature of the violation is such that it doesn't, don't apply it. It always makes sense in the antitrust context, but now we're dealing with a direct fraud, so there's no logic to it. That is our view, Your Honor. It's a little bit odd, though, because the fraud you're relying on is an implied certification which the Medicaid statute requires every single provider of drugs and, I assume, services to sign. I'm sort of struggling with the concept that out of that you can create a RICO violation by saying, oh, we have a theory of fraud and the certification is the fraudulent act and, therefore, it displaces all of the prior law of standing. I don't think it displaces the prior law, but a mail-and-wire fraud claim predicated on a fraudulent omission is nothing novel or new. And in this case, there clearly is a fraudulent scheme to conceal violations of federal law from the entity that is bearing the primary risk of those violations. Okay, so all of these companies which make the pharmaceuticals or prescribe them believe that they are complying with law and so they sign the certification. You disagree, they are complying with law, and so you're in court on a RICO violation. Yes, because they've deceived us. Correct. But you have to meet the heightened standard of pleading scienter and a whole bunch of other things, right? Under a RICO. Yeah. Yeah. So, I mean, in other words, if there's a gatekeeping to this problem, you say they're internal to the gatekeeping mechanisms that make generally fraud claims difficult.  And you haven't talked about that much, the courts holding that you didn't sufficiently plead fraud. Yeah, in our view, Your Honor, of course, that we have, and specifically that if there is anyone that should have known exactly what we were alleging, it is the defendants. Our claims came from a relator key TAM action that is based on the exact same underlying conduct that they resolved in a settlement after a year of litigation. None of those had anything to do with the certifications being made to you. Well, it was a false claims act. And that's the key thing that you're adding that the pleadings don't refer to in any specificity. The false claims or the false omissions to us are unique to this claim. But, big but, the false claims act was predicated on false data that was transmitted through Humana to the federal government. That's why the federal government can pursue a false claims act. But the relevant thing is what was transmitted to you. Correct. And that's what's missing in the pleadings, any specificity as to what was said to you. Okay. So, our view is we put in the statutory language, if that is what was missing, we should have been given a single chance to amend our complaint and add that, which we did in the amended complaint. You had a lot of notice that there were, from your opposing parties, that there were problems with your complaint. And we've said time and time again, then move to amend your complaint. You don't wait until the district court has ruled that your complaint was inadequate, and then come in and try to amend your complaint. You can't run the court system on that model. This court has reversed cases in which an amendment was sought. Very rarely, very rarely. We would submit this is one of those cases. There was a long time here. And there was much new evidence discovered and, in our view, a novel legal theory adopted. But his point was, I thought the district court's point was that the thing that's missing are things you would have had at the time you filed. And at the time you were called out for not having put it in. Including information from your own drugstore. Well, the information from our drugstore wouldn't have bolstered. I mean, even in the amended complaint, there's not much from that. But the key information that we were missing at the time of the complaint was which of the claims were fraudulent and which weren't. We did not know. And, yes, the language of the certification and what we did in the amended complaint was we clarified that it was an omission theory. Why didn't you know? Sorry, wait a minute. Why didn't you know which were which? Because some of the co-pays were paid by the insureds. And those claims are clean, right? We would have covered those claims. Other co-pays were paid illegally by Biogen being funneled through the sham charities. And we didn't know which was which. On your theory, if the insureds paid it, they were the direct victims of fraud. There was no fraud if the insured paid. Because? Because then there wasn't an illegal kickback. And then the claim to us was clean. Your theory that there was a violation of the certification, why wasn't there a fraud? Well, because the certification certifies that the claim is clean. It wasn't made to the patient, even though it exists in the statute? No. Our theory is that in that case, the certification is accurate because there is no kickback. There's no illegal conduct in that claim. The kickback has to be specific to each particular co-pay paid. Yes. So the only time there is an illegal certification is with respect to a prescription for which the co-pay was done through this scheme. Correct. And that is why in the amended complaint, we add an exhibit that lists all of the claims that we were subsequently able to determine involved in a legal kickback. But no certifications with respect to any of them. We clarified it's a fraudulent omission theory. I think that's what's being clarified. I may have misunderstood, but I thought you said because of their activities, more people stayed on the more expensive drugs and they paid more for the drugs. Why isn't that true of patients as well? That's a great question. That is, I think, a separate theory of injury. And it goes to my point that the patients, on your theory of the fraud, were directly injured by the fraud. Whether they bring suit or not, they are also injured by the fraud. I think there is a potential for two separate theories of injury based on my pricing. Are you pleading the second one? I think we arguably alleged it, but I think in our briefing, we have come to ground on that not being a lie. That's not in the case. Yes, and I think we just want to clarify that. And that second thing, I'm sure you would disagree, but that is more susceptible of being a candidate for being subject to the indirect purchaser rule. Correct. Because that's a pass on to overcharge. Yes. Thank you. Thank you, counsel. At this time, would counsel for Biogen, Inc., please introduce himself on the record to begin? Good morning, and may it please the Court, Mark Fleming on behalf of Biogen. We've divided the argument this morning. Ms. Harris, who represents ACS, will explain why Humana did not plead fraud with particularity, but Judge Saylor was also independently correct to rely on the direct purchaser rule. I think the point of departure has to be that the exact same claim that Humana is bringing here could have been brought by a direct purchaser, a wholesaler or distributor, to whom Biogen sells its drugs as the first link in the chain of distribution. Humana's position would not only create a circuit split, it would also create a But they're not complaining about any passed on costs that went through that sale. They most certainly are, Chief Judge Barron. And the very first sentence of the complaint, on page 11 of the appendix, says that the scheme, the alleged scheme, caused overpaying for MS drugs. The second paragraph talks about inflation of the price of prescriptions. Humana told Judge Saylor in their motion for reconsideration, this is docket 56 of the district court docket at page 7, that the defendants, quote, conspired to overcharge for the MS drugs. Now, it is true Mr. Dunn in his appellate briefing and this morning is trying to walk away from that and say that's not the theory. Why are you complaining about it? I beg your pardon? Why are you complaining about that? If there's two different, you're just at most, you're not saying that's their sole theory, are you? Well, the point is that is at least one theory. But if they're abandoning it on appeal and they've already lost below, what do you care? Well, then let's talk about the second theory, which is not the one that they pushed in front of Judge Saylor. The second theory could also be brought by a direct purchaser. But in that instance it wouldn't be a pass on. It would be exactly the same as in Kansas v. Utilicorp, where the direct purchaser of the utilities in that case bought more gas than they would have at a higher price. No, but their point is they're not complaining about anything other than having been directly induced to purchase fraudulently. That doesn't look like the overcharge pass on issue in Illinois brick at all. Well, the fact that they are saying And the fact that there was another person who was separately induced fraudulently to purchase doesn't change that fact. No, it does, Judge Barron, because the wholesaler could have brought exactly the same claim. And they could say It wouldn't be exactly the same claim. They'd have to be talking about the particular representations that were misleading to them. And proof of the misleading representations to Humana would be irrelevant in their case. In the typical Illinois brick case, it's the same proof. You just say they did an antitrust violation. It hurt me. It hurt all the downstream purchasers. That's very different. I don't think so, Chief Judge Barron, because the damages they'd be going after, the harm they'd be claiming is exactly the same. The damages would be for distinct conduct in each case. It would be the separate lies being told to separate people. I don't think so, Chief Judge, if I may. Could Humana rely on the false certification alone to the direct purchaser to win? Well, I don't think that a RICO plaintiff needs to prove reliance on the false certification. That's the holding of the bridge. If they're trying to do it for an overcharge, then it looks a lot like Illinois brick. I can see that. But if what they're contending is you lied to me and the law you made to me induced me to make a payment, I can't rely on the law you made to someone else to prove that you lied to me. If I may, a wholesaler could say, just like the plaintiff in Bridge v. Fiends, you had a scheme in which you got more patients to buy the Biogen MS drugs than otherwise would have done so but for the scheme. As a result of that, I as a wholesaler had to pay for more Biogen drugs than I would have but for the scheme. The predicate for that, if the mail and wire fraud is the predicate violation, is that a lie was told to the wholesaler by the one who engineered the scheme unless it's an overcharge theory. Under Bridge, the lie does not have to be told to the wholesaler. There just has to be a fraudulent scheme where there was an act of mail fraud. It doesn't have to be directed at the plaintiff. Again, that's the holding of Bridge. Their theory here is that the only mail and wire fraud that occurred, at least as they've narrowed it on appeal, is a consequence of the lies directly being told to them, correct? That is their allegation. And if that's the theory of mail and wire fraud RICO violation, no one else can rely on those lies to bring the claim that they were therefore lied to and therefore induced a purchase? So reliance on the fraudulent scheme is not an element. That's what the Supreme Court told us in Bridge. And I'm sorry for repeating myself, but that is the answer to this question, is that a wholesaler could bring exactly the same claim and say, you set up a fraudulent scheme. You made, as a result, I purchased directly drugs that I would not otherwise have paid for and I paid too high a price for them. Had I not had to do that, I would have had higher profits just like an Illinois brick. Would the lie to Humana be relevant to that wholesaler's claim? It absolutely would. It would be the same claim because the wholesaler would say, the patients would not have bought Biogen's expensive drugs. They would have bought a cheaper drug or maybe no drug at all. And then I would not, as a wholesaler, have had to buy Biogen's drugs. Now, in a different world, perhaps, before Hanover Shoe and where RICO structured differently, Biogen could possibly defend by saying you weren't harmed because you passed it down. But Hanover Shoe bars that defense. That's exactly the point. That is why recovery is concentrated in a single party in the market. One and only one plaintiff can go after the harm. Otherwise, you have the difficulty of trying to figure out how much overcharge or how much harm was imposed first on the wholesaler, how much did they internalize and how much did they pass on. That's exactly what the Supreme Court has told us time and again as an exercise the court should not be engaged in. Could you just help me with this piece of it, which is, in fact, unlike in an antitrust violation case, since it's a fraud theory and the way they've identified the fraud as to their theory, that it was necessary that they be lied to, Humana, in order for them to be able to make out their mail-and-wire fraud claim, given the theory they're relying on, which is a different theory than if they were relying on a lie solely to the wholesaler. Correct? That could be a different theory of the harm. Yes. Well, that's the theory they're now saying is their theory that they want us to adjudicate on appeal. That is what they have pivoted to on appeal. Yes. Yes, that's right. So what do we do about the fact that that type of approach under RICO does look different than the antitrust violation in which the conduct by the antitrust violator there just is the same with respect to all the actors who could bring the claim, whereas here, by their own theory, the conduct of the violator is different than it would be under other theories as to other people. That's endemic to the fraud theory they're relying on, right? Well, it is certainly true that they are trying to plead it differently, but it is still the same kind of harm based on the charging of either a too high a price or a price at all for a product that has gone down a chain of distribution. And whether the accused fraudulent scheme takes hold at one area or another, nothing would prevent a wholesaler from saying you had a conspiracy. It involved mail fraud. I can sue any member of the conspiracy for that, and I am the direct purchaser of the product, but for the scheme I would not have bought it or I wouldn't have paid as much for it. And direct purchasers bring RICO claims all the time in the pharmaceutical industry. It's not a far-fetched project. It also strikes me that Humana, in its theory, is not saying we were the only ones lied to. They are saying everyone who is in the chain under the Medicaid statute has to make the certification. And Humana, in that sense, is not different than anybody else in the chain. It's true if they hadn't been lied to. That's the difference. Yes, you've got the point. So if I may respond, it has been a bit of a moving target, right? In the original complaint, the accusation was that the defendants lied directly. So are court arguments. Moving targets. Yes, quite so. But so the original accusation in the original complaint was that there were statements made directly to Humana that were fraudulent, to which Judge Saylor said, why haven't you alleged them then? I don't know what they are. There's nothing in this complaint that tells me what was said that was actually fraudulent. As a result, they've pivoted to this idea of implied omission, which is nowhere in the lower court briefing, as I recall. But I think the point that Your Honor's question builds within it is correct, which is they're now trying to say that everyone somehow had some kind of misrepresentation from Biogen. We still don't know what it is. Even in the case of an implied omission, as I think Ms. Harris will expound upon, there's a requirement to say what was said and why that became fraudulent through the omission of whatever wasn't said. We don't even know what that was. All we have in the paragraph that Mr. Dunn cited is the language of a regulation. All the contracts that were cited in the complaint as against Biogen, they have nothing to do with Medicare. They're never connected to the RICO claim at all. Would their claim, just to play out the hypothetical for a second, suppose in the certifications to the wholesaler they said, yeah, we did this kickback scheme, sorry. So they told the truth. Then to Humana, they just left it out. What happens then? Well, we would require a more detailed allegation to understand it. I understand the Rule 9 point. It is a Rule 9 point. I don't mean to evade it. I'm asking the Illinois brick asker. Yeah, no, I'm trying to think it through because, of course, if the accusation is not what they originally tried to plead, which is that Biogen made false statements directly to Humana, but it is only that Biogen made a correct statement, so no fraud of any kind in its statement to a ‑‑ To everybody else but them. But then ultimately, according to the theory we heard from Mr. Dunn this morning, Biogen doesn't make a separate statement. There's only the initial statement, and then that just sort of trickles down the line. I'm asking for the Illinois brick purposes to understand how it applies in the RICO context. You're trying to say that, oh, it's the same because everybody can ‑‑ I'm trying to highlight that the feature that's different is that there's a specific representation being made. So if it's to one party who is an indirect purchaser, but it was not made to anybody else, are they still out of luck and they can't sue? So I think, well, again, there may be a theory by which Humana could say in that hypothetical and only in that hypothetical that the wholesaler was somehow part of the conspiracy. And in that situation, perhaps the wholesaler could be, you know, were this court to recognize a co‑conspirator theory where everyone upstream is part of it, that might be a way around it. This court's never recognized the co‑conspirator. Partial answer is I don't see how that wholesaler, having been told, we're committing fraud on the federal government, but that's okay. Go ahead and resell it and pass it down the chain. Just economically, I don't see how that could possibly happen. I was only taking it as a hypothetical. I agree with you. I don't think it could possibly happen. I think doctrinally they could possibly be alleged in that circumstance to be a co‑conspirator and they'd be joined as a defendant. Obviously that hasn't happened here. If the wholesaler doesn't know about it, there may be some way the wholesaler could still argue that the fraud which was committed by hypothesis against Humana still resulted in the wholesaler buying more drug and paying more for it than they otherwise would have had that fraud not happened. But I agree. If they know about the fraud, then arguably there's no claim that they can bring, but that sounds more like a co‑conspirator type situation. And, again, a reason I bring that up is it's important that then they be joined as a defendant because part of the difficulty here is the risk of multiple recovery against multiple parties. And, you know, Humana may well say, oh, these distributors, they would never sue. It's not in their interest to bring a claim. You don't have to worry about it. We are the only victim. We're the intended victim. We're the only direct victim. But, of course, the wholesalers are not a part of this case. They wouldn't be bound by any such judgment and nothing would prevent them. Thank you. Thank you very much, Your Honor. Thank you, Counsel. At this time, Counsel for the Appley Advanced Care Scripts could please introduce herself on the record to begin. Thank you, and may it please the Court. Sarah Harris for Appley Advanced Care Scripts. Affirmance is independently warranted because Humana's complaint flunks Rule 9B's heightened pleading standard. Now, just to jump straight to the biggest problem, Humana's complaint never identifies the contents of any false or misleading statement. Humana's counsel just pointed to Paragraphs 27 to 29 as sort of the crux of the allegations of the complaint. They start at Record A-19. If you look at those paragraphs, they are wrapped up a lot of key things. They recite regulations about obligations for Humana to submit electronic records and prescription drug event reports to the federal government. They detail that subcontractors are generally required to comply with federal law, and then they note that other regulations require downstream entities that generate and submit PDE claims to certify that such data is true, accurate, and complete. Now, what's missing from any of that is what is Humana itself being told? There is nothing in the complaint that says what is the substance of the contracts that are between Humana and ACS? What is the ensuing substance of any representations and claims? And what do you say that they've pled, unless you're saying they haven't pled this, that we know in every contract there is this commitment that I'm complying with all the laws, including the anti-kickback statute? I take it that's pled. We would dispute that that is pled because the contract that they point to is simply a 2006 contract with Biogen. That's at paragraphs 134 to 36, sorry, 135 to 36, where they quote that. They think it's conceded at that point that that contract is irrelevant. It does not involve the Medicare context. There are general allegations about contracts in the world, but there's nothing that's pointed to with respect to the specific contractual language. And, indeed, at the motion to dismiss hearing, Humana's counsel said, we didn't put these contracts in the record. We are happy to supply them if you'd like. And same thing with respect to the certifications. They said, if you want more details, give us leave to amend. We will submit this. And this is at A287 in the record. And so, again, this is the classic situation where if you put your complaint in the world, it omits key details. Just so I understand, they obviously would have had the contract with ACS itself. Yes. But with respect to the other pharmacies, the relevant contract would be the contract between that pharmacy and another party, correct? So, keynotely, I'm not sure what their theory is with respect to other pharmacies. The deal is, Humana certainly has contracts with various pharmacies. Humana's amended complaint then alleges also hanging their hat on contracts with Biogen, trying to say there are other ones besides 2006. And then one contract with ACS. I don't know on appeal what their theory with respect to other contracts would be. Suppose we thought the ACS leadings did meet Rule 9. In other words, with respect to whatever the theory is as to ACS, it was good. But with respect to anything else, it's all too diffuse and it's hard to know what they're relying on or talking about. What happens, what's the right disposition from your perspective in the case? I guess it would depend on the theory on which ACS, the leadings as to ACS could be adequate but not as to others. I guess the idea would be that, well, they have, because you're saying we don't even have the ACS contract. Yes, and that's conceded from the hearing and it's sort of a glaring omission because I think there's sort of two steps to their theory. It's one that there are contractual promises that are made about general compliance, but two is, I mean, if you look at every single paragraph that's operational in their complaint, like 35 to 36, 50, 95, like I could go on, they're all about the representations in place. So you're saying they are alleging ACS has the obligation to comply with the anti-kickback statute. They're saying as a matter of federal law there is that obligation, but the case hangs on the representations that are purportedly made in claims. And this court's case in Giuliano I think is a good parallel here where you can't just sort of say we know the general substance of an alleged misrepresentation. There it's about who owns particular property. You can't just say, oh, you kept repeating that misrepresentation in state court pleadings to a regulatory commission and not say, you know, substance. But is there any way to read the pleadings here to suggest that ACS wouldn't have had to, in agreeing to the contract with Humana, agree that they were not violating the anti-kickback statute? Well, yeah, I think there is a big question about this for two reasons. One is we don't know what the contract said the promise was in terms of how you represent Humana that you're complying. Two is the claims. I mean, just as a matter of substantive false claims act anti-kickback law, there is a world of difference between saying you made an express promise in your claim, claim by claim, that said I promise that, you know, check the box, I complied with federal law versus I implicitly by submitting you a claim for payment am implicitly telling you that I didn't do anything wrong and I didn't violate any law. The Supreme Court's decision in Escobar and this court's remand decision I think show how that distinction hugely matters in terms of the legal viability of the case, and that's for 9B purposes all the more reason to think you have to plead with particularity. What's going on so someone can defend themselves against it? Escobar itself is a really good example of what one might have had to plead in order to adequately do a 9B theory of implied certification because this court's remand decision sort of shows the complaint said, here's a particular claim, it's coded as having been performed by social workers. The omission was there was no compliance with state laws requiring certification that you actually had a valid social worker do it. Like there was massive unqualified people who lied about their credentials performing the claim which made it an omission. So you could pinpoint from that complaint what's the representation in the claim and what omission makes it actionable. What's the gap here though? I'm just trying to understand what's the gap here on their theory which is you had to comply with the anti-kickback statute. You are seeking payment for something that didn't comply. So the really big gap is two things. They're not telling us what the substance of the claim is. So like what is the nature of goods and services provided in the claim? So what is it that I'm saying affirmatively versus what is it that becomes an actual omission because they didn't say what was happening? What they're saying now on the implied certification theory is it's the fact that the copay was induced through the fraudulent scheme and you didn't say that in your request for payment. Am I missing something? Well, I think a few responses on that. One is I'm not totally sure that's their theory because that's not the theory in their complaint and that's not even the theory in their amended complaint. The theory in both of those things, again, I think the complaint is the only thing to look at because there are representations that are made. There are representations made directly, et cetera. The amended complaint just gives a little more detail on regulatory obligations, but in no place says by submitting a claim for payment, that is the representation. And this implied certification theory was not even argued to the district court? It's not argued to the district court. And, again, it really matters what world we're in on implied certification. The Escobar case itself shows it because the Supreme Court did not just say, you know, go ahead, any kind of claim that you're submitting for payment is an implied representation that's viable. The Supreme Court said the only valid theory in this world we are accepting is if you make something affirmative in your claim, like there you're coding it as being performed by a social worker, and you omit the violated key state laws about social workers, that is an actual omission. So, again, even if we accept that they can constructively amend their claim in their first second briefing, there's real problems. So we would ask that the court approve. Any further questions? Thank you, counsel. At this time, counsel for the appellant, please reintroduce yourself on the record. You have a three-minute rebuttal. Thank you. Robert Dunn for Appellant Humana. Your Honor, there's a lot of feigning of ignorance here. The Medicare statute provides the missing information, and these folks are sophisticated entities that comply with Medicare all the time across the board. When we provide a PDE to Medicare, we certify that everything that has been submitted to us is clean, in compliance with law, and that is why they are allowed, the federal government is allowed to go after those folks for false claims acts. The fraudulent omissions to us are very, very straightforward. They have submitted a claim for coverage, this amount for this drug for this patient, and in that submission of a claim, there is no disclosure that this is not a clean claim because there was an anti-kickback violation in the processing of the claim. Now, to address Biogen's counsel's comment first, we have never seen a wholesaler sue for this because a wholesaler would honestly have difficulty even establishing Article III standing in this case since all they have done is been able to buy and sell more drugs than they would have but for the scheme targeting Humana. So there is no risk of duplicative recovery. The district court recognized that in this case. The district court also recognized that our primary theory... Your harm is a consequence of the fact that you get paid up front from the federal government and this is taking money out of that that you otherwise could just keep? Is that the idea? Yeah, it's the over-utilization of the drug. What does that mean? It means that we have a fixed yearly allotment that is based on estimates of how often drugs will be used. That's the money you get from the federal government. And the premiums. It's the combination. And you would just keep that? Yeah, we would have... Our expenditures are basically based on the claims made to us. So if there are fraudulent claims made that we wouldn't have paid, Humana would otherwise save that money and we'd probably have a lower payout the next year from the government or whatnot. But the idea is we have a risk. Every time we pay a claim, if there are fraudulent claims, Humana has an independent exposure that only we suffer. And then, you know, if we are able to recover in this case, there's a complicated formula of division of those recoveries with the government, but the injury is ours. With respect to the amended complaint, Your Honor, what becomes very clear is that there is no information that was withheld from defendants or from the district court to enable them to understand our theory. Our theory is you sent us claims. You were obligated to tell us in those claims. Did you argue implied certification below? We argued admissions. I don't think we used the language implied certification. I think that is a clarification for, you know, help to this court and to crystallize the claim. The paragraphs 100 and 111 both describe omissions, certain omissions, misreps and omissions. So as this court has seen, the case as it comes here to this court is an implied certification based on an omission that is tied to specific contracts in which both defendants and all the others agree to comply with federal law. You can ask your questions. Thank you. Thank you, Your Honor. Thank you, counsel. That concludes argument in this case.